MANUFACTURERS BANK & TRUST COMPANY of St. Louis, Executor of Estate of FRANK KUNDA, Deceased, v. LOUISA KUNDA et al., Defendants, and LOUISA KUNDA et al., Guardian, Appellants.—No. 39033.—185 S. W. (2d) 13.

Division One, January 2, 1945.

Rehearing Denied, February 5, 1945.

*Emmett Golden* for appellants.

*Rassieur, Long & Yawitz* for respondent.

872

*Neuhoff & Millar* for interveners.

DOUGLAS, J.—Frank Kunda died leaving only a widow, Louisa Kunda, of unsound mind. Some six years before his death she had suffered from carbon monoxide poisoning and had been of unsound mind from that time on. Shortly after her husband's death she was adjudged insane. Rose Knapp, her sister, is her guardian and the Jefferson-Gravois Bank of St. Louis is her curator.

Frank Kunda left an estate of more than $80,000 all in personal property, no real estate. He left no descendants. By his will he gave all his property in trust to the Manufacturers Bank & Trust Company of St. Louis for the benefit of his wife. The trustee was directed to use $200 per month for the care of his widow, and so much more as it found necessary for her support, care and personal and physical well being. The provisions for his wife were declared in his will to be in lieu of dower and all other statutory marital rights.

The guardian of Louisa Kunda filed in the probate court a renunciation of the will and an election to take under Section 325, R. S. 1939, which entitles a widow to one-half of her husband's estate if he died without a child or other descendants.

The trustee did not recognize this election, but filed this suit asking instructions of a court of equity as to what course to take for the best interests of the widow. The learned chancellor found it was for

the best interest of the widow to take under the will and made such election for her. The widow has appealed. Her guardian also has appealed.

We held in Trautz v. Lemp, 329 Mo. 580, 46 S. W. (2d) 135 that a widow is required to elect whether she should claim the benefits given her under a will in lieu of her statutory rights or should renounce the will and take under the statutes. This is not the election prescribed by statute but is one required by equity. Or, as we said in Sutorius v. Mayor, 350 Mo. 1235, 170 S. W. (2d) 387, 171 S. W. (2d) 69, an election is required between the widow's *statutory rights* in her husband's property and her *testamentary rights* in his property under the provisions made for her in his will, but it is an election required in equity and only because the widow may not claim inconsistent rights in her husband's property. (Citing Trautz v. Lemp, supra.) We said: "The will on its face required the election to be made, since it expressly provided that the provisions made therein for his wife should be in lieu of all dower and marital rights in his estate at the time of his death."

We considered a situation similar to the one in this case in In re Estate of Connor, 254 Mo. 65, 162 S. W. 252. There the husband died, having provided by will a monthly income for the care of his insane wife. At the instance of the widow's relatives she attempted to renounce the will and take under the statute through the help of a court of equity. We held a court of equity has the power to make an election for an insane widow, either to take under the will or to renounce the will.

In that case we decided the monthly allowance provided by the will for the insane widow's care was more in her interest than were her statutory rights in her husband's estate. We said: "So that upon the things which should guide the chancellor we may summarize the holdings thus: (1) Whatever is done should be for the best interest of the insane, other and all matters being considered, (2) 'best interest of the insane,' does not necessarily mean from a pure monetary viewpoint, but other matters must be taken into consideration, beyond the mere matter of dollars and cents; (3) her kinsmen have no interest and they should be left out of consideration; (4) the fact that an insane person (permanently so) cannot use money with discretion, and has no need for money or property further than to comfortably care for her in every way, is a matter of consideration; (5) that the right of a testator to dispose of his property as he pleases, so long as he amply provides for an insane wife is a matter for consideration; (6) and that the kinsmen of the wife have no claims either directly or indirectly upon the bounties of the husband, whilst those of the husband have, is also a matter for consideration. There may be others, but certainly from the case law, the foregoing are all matters which should appeal to the chancellor's mind in determining whether or not the

will of the husband should be renounced in the best interest of the unfortunate insane wife.''

Also under similar circumstances a court of equity was requested to make an election for an insane widow between taking a child's share under the statute or taking under the will of her husband in Primeau v. Primeau, 317 Mo. 828, 297 S. W. 382. Again we held it was for the ''benefit and best interest of the widow [under such circumstances] to accept the provisions of the will and to take under it, when full consideration is given to her mental condition, her needs, the provisions made for her by testator, and the disposition he wished to make of his property and the absence of any just claim upon his estate by his widow's next of kin.'' That case approved the holding of the Connor case and affirmed it. These two cases are ample authority in support of the chancellor's decision.

Appellants contend the principles announced in these cases may be invoked only after an election has been made for an insane ward upon fraudulent and dishonest motives and where there is no fraud, as here, they are not pertinent. The Connor case did not put any such limitation on the power of the chancellor but held the chancellor had full power to say either that the widow should take under the will or to say that she should renounce the will. This rule was followed in the Primeau case.

Appellants point out there are no statutory provisions which compel an election in a case such as this; that the statutes require an election only when dower in real estate is involved under Section 318, R. S. 1939. With this premise appellants contend that since there is no real estate in Kunda's estate and Section 325, R. S. 1939 automatically entitled the widow to one-half of the husband's personal estate of which she may not be deprived by will, there is no need to make an election whether to take under the will or the statute. Speaking of Section 325, it is stated in Nies v. Stone, 232 Mo. App. 1226, 117 S. W. (2d) 407: ''Sec. 325 [R. S. 1939] gives absolutely to the widow of a childless husband one-half of his personal estate, subject to the payment of the husband's debts. Further, ▇▇ that the will of the husband cannot defeat said right. Further, that under the provisions of said section, the widow does not have to make an election to take.'' This statement, according to the opinion, is based on Klocke v. Klocke, 276 Mo. 572, 208 S. W. 825. In that case a husband died leaving no lands subject to dower. He left a widow but no children. The court held that where there is no dower to be had in land under Section 318, R. S. 1939 there is no necessity for a widow to make the *statutory* election required by Section 327 as a condition precedent to taking one-half of her husband's estate under Section 325. On this subject we said: ''Where she has the two rights, she must *elect*; where she does not have common law dower, then the law *elects* to give her absolutely the estate between which and common

law dower she would be compelled to elect if she had both.'' There was no will in the Klocke case and therefore no question of an election between testamentary and statutory rights. On the other hand there was a question of the renunciation of a will in the Nies case but since the latter decision was declared to be founded on the holding in the Klocke case the mention of an election in the Nies case must be understood as referring to the statutory election discussed in the Klocke case. If the ruling in the Nies case could be held to refer to an election imposed by a will, it is unsound and should not be followed.

Other cases cited by appellants to support the contention that no equitable election is necessary do not so hold. Egger v. Egger, 225 Mo. 116, 123 S. W. 928 states that a widow, in order to obtain a child's share under the statute, ''may simply ignore the will and demand what the law gives her.'' But by making such a demand she thereby makes her election. Spratt v. Lawson, 176 Mo. 175, 75 S. W. 642, sustained a renunciation of a will and an election to take under the statute. Waters v. Herboth, 178 Mo. 166, 77 S. W. 305, upheld the claim of a widower under the statute and against a will. In re Dean's Estate, 350 Mo. 494, 166 S. W. (2d) 529 held that a widow may take statutory benefits in addition to the benefits under a will, where such is permitted by the will. That case recognized and discussed the doctrine of equitable election. In re Opel's Estate, 352 Mo. 592, 179 S. W. (2d) 1 discussed the statutory election provided for in Sections 327 and 329, R. S. 1939. These cases in no wise obviate the necessity of electing to take either under a will or under the statutes.

In this case the will expressly provides what it gives the widow is in lieu of her statutory rights. It is of course necessary that an election be made whether the widow shall take under the will or shall renounce the will and take under Section 325. Under the circumstances of this case a court of equity is authorized to make such election. The learned chancellor has had presented to him much evidence about the widow, her condition and her needs. His position to adjudge her best interest is superior. His finding is sustained by the record. We defer to it and approve it.

Judgment affirmed. All concur.

ON MOTION FOR REHEARING.

DOUGLAS, J.— Appellants urge that we reexamine the decision in the case of In re Estate of Connor, 254 Mo. 65, 162 S. W. 252, supra and the statement of the principles therein set out and quoted in the opinion in the instant case which should guide a chancellor in choosing between benefits under a will and statutory rights for an insane beneficiary. It is asserted these principles were taken from Penhallow v. Kimball, 61 N. H. 596 which was later disapproved by

the same court in Wentworth v. Waldron, 86 N. H. 559, 172 A. 247. After the decision in the Penhallow case New Hampshire enacted a statute giving the guardian of an insane person the power to make the choice for an insane beneficiary between taking under the will or under the statutes. Under this enactment the guardian in the latter case chose to renounce the will and take under the statutes. The court held that even though the provisions of the will were sufficient for the comfortable support and maintenance of the insane widow it was within the discretion of the guardian under the enactment to renounce the will which provided a life income for the widow and take the widow's statutory share outright. In reaching its decision the court pointed out the two Missouri decisions, In re Estate of Connor, supra, and Primeau v. Primeau, 317 Mo. 829, 297 S. W. 382 which follows the Connor case, were not pertinent because of the enactment. The court goes ▆ on to say the principles enumerated in the Penhallow case for the guidance of a chancellor in making an election for an insane ward (repeated in the Connor case) have been severely criticized but that it was unnecessary for the purpose of that case to pass upon their correctness.

The Wentworth case approved the decision in Emmert v. Hill, 226 Ill. App. 1, which laid down the general rule that in determining the best interests of a ward the choice must be made which will obtain the greatest money value for the ward. It was stated that this rule might not apply in every case if the difference in money value was not great. However, the Illinois Court went on to say that to follow the Connor case penalizes a widow for being insane. We disagree with the latter statement. What the Illinois Court must have meant was the principle announced in the Connor case affected those who would inherit from the widow. However, if the widow was sane what assurance would there be she would provide for such heirs? The welfare of the heirs of the insane beneficiary seems to be the impelling motive in those decisions which follow the rule laid down in the Emmert case and which are in a decided minority. They include Mead v. Phillips, 135 F. (2d) 819; In re Stevens Estate, 163 Iowa, 364, 144 N. W. 644, and In re Hills, 157 Misc. 109, 283 N. Y. S. 733.

The rule that the choice must be determined by the greatest money value was rejected in the leading case of Van Steenwyck v. Washburn, 59 Wis. 483, 17 N. W. 289. The court said to follow such rule would defeat the will and the testator's intentions were a proper consideration and entitled to some weight in making the election. It pointed out if the court was compelled to elect the more valuable interest without reference to any other consideration the court, although authorized to do so, would not really exercise any discretion whatever. That case has been followed by the majority of the decisions on the question. See: State ex rel. Percy v. Hunt, 88 Minn. 404; In re Hansen's Guardianship, 67 Utah, 256, 247 P. 481 (quoting with approval

from the Connor case); Carey v. Brown, 194 Minn. 654, 260 N. W. 320; First Nat. Bank of St. Petersburg v. MacDonald, 100 Fla. 675, 130 So. 596 (citing the Connor case with approval); Hamilton Nat. Bank v. Haynes, 180 Tenn. 247, 174 S. W. (2d) 39 (citing the Connor case with approval); In re Brooke's Estate, 279 Pa. 341, 123 A. 796; In re Stockton, 311 Pa. 189, 166 A. 648; Sippel v. Wolff, 333 Ill. 284, 164 N. E. 678, a decision of the Illinois Supreme Court which fails to mention or follow the Emmert case, supra. See also the annotation in 74 A. L. R. 452, which cites at 458 the case of Re Sefton [1898] 2 Ch. 378 described as a leading English case on the subject in which the judge says: ''Upon the question whether it would be for the benefit of the lunatic to comply with the conditions contained in his father's will, I have no hesitation in stating my conclusion, which is that it would be for his benefit. I think we ought not in these cases simply to take the narrow view of what is the pecuniary benefit. We should act for the lunatic as if he were a person of sound mind; and being a person of sound mind, he would be actuated, as a reasonable man, with a desire to comply with such a condition as this contained in his father's will.''

It is apparent the Connor case is in line with the majority view and is regarded as sound. We were correct in reaffirming and following it in this case.

Appellants point out that the widow is now 72 years of age. She has an independent estate, owns the home in which she resides, receives a monthly income from her own estate ample to meet all of her expenses so that she is not dependent on the provision in the will for her support now or for the short expectancy of her future life. Therefore, they argue, she should be permitted to take her statutory lump sum allowance which they estimate at approximately $50,000. Even so, the chancellor in his discretion was justified in retaining for her the security that she would be cared for so long as she lived as provided by the will. Upholding the will was a proper consideration.

The motion for rehearing is overruled. All concur.